EDWARD MORIN *v.* BELL COURT CONDOMINIUM ASSOCIATION, INC.
(14360)

PETERS, C. J., CALLAHAN, COVELLO, BORDEN and BERDON, Js.

. Argued April 2—decision released August 4, 1992

*John A. Blazi,* with whom was *Robert S. Cullen,* for the appellants (plaintiff and intervening plaintiff).

*Ralph G. Eddy,* with whom, on the brief, was *Robert A. Byers,* for the appellee (defendant).

COVELLO, J. This is an action to recover damages for personal injuries sustained as the result of the defendant condominium association's alleged negligence in the maintenance of a stairway in one of its buildings. The issue presented is whether the evidence at trial was sufficient as a matter of law to support the conclusion that the defendant had constructive notice of the plaintiff's presence at the time and place of the accident.[1] We conclude that the evidence was insufficient and, therefore, affirm the judgment of the Appellate Court that so held.

The evidence adduced at a trial to the jury indicated the following. On May 13, 1986, the plaintiff, Edward Morin, an East Hartford police officer, responded to a radio dispatch informing him of a fire on the premises of the defendant, Bell Court Condominium Association, Inc. The complex consisted of four buildings housing approximately 200 people. There was no evidence that an agent of the defendant had requested police presence on the premises on that day. Upon arriving at 10 Bell Court, a three story building served by front and rear common hallways and staircases, the plaintiff entered the unlocked rear entrance and proceeded to evacuate the occupants. In the course of descending from the third floor to the second floor, the plaintiff sustained injuries when he tripped on a defective stair. The plaintiff testified that he, or other police officers, had been on the premises approximately twenty to thirty times prior to this accident, but he could not cite specific dates, times or places of their

---

[1] We certified the following issue on appeal: "Did the Appellate Court correctly conclude that the plaintiff had introduced insufficient evidence at trial for the jury to find that the defendant had constructive notice of the plaintiff's presence at the time and place of the accident?" *Morin* v. *Bell Court Condominium Assn., Inc.,* 220 Conn. 908, 597 A.2d 334 (1991).

visits to the condominium complex. The plaintiff also failed to establish that any of the visits had occurred subsequent to the time that the defendant assumed control of the common areas when the complex was converted from rental apartments to condominiums.

At trial, the jury returned a general verdict for the plaintiff. Thereafter, the trial court granted the defendant's motion to set aside the verdict on the ground that there was insufficient evidence, as a matter of law, for the jury to have reasonably concluded that the defendant knew or should have known of the plaintiff's presence on the premises at the time and place of the incident. The Appellate Court affirmed the judgment of the trial court; *Morin* v. *Bell Court Condominium Assn., Inc.,* 25 Conn. App. 112, 593 A.2d 147 (1991); and we subsequently granted certification to appeal limited to the issue of the sufficiency of the evidence concerning constructive notice.

On appeal, the plaintiff claims that the judgment of the Appellate Court should be reversed because: (1) constructive notice of his presence was established since the condominium complex had high levels of traffic in the common areas and the police had been summoned to the premises many times in the past and it was, therefore, foreseeable that they might return; and (2) constructive notice should have been assumed since the premises were open to the public. The parties agree that the defendant never had actual knowledge of the plaintiff's presence on the premises and that the plaintiff's legal status as a police officer on the premises in his official capacity was that of a licensee.

I

The plaintiff first claims that constructive notice of his presence was established because the police had been summoned to the dwelling twenty to thirty times in the past and it was, therefore, reasonably foreseea-

ble that they might return. The plaintiff further argues that even if the defendant did not anticipate this particular plaintiff, the defendant still should be liable because it should have reasonably anticipated that someone might be injured by the defective step given the high level of traffic in the common areas of the condominium.

In general, there is an ascending degree of duty owed by the possessor of land to persons on the land based on their entrant status, i.e., trespasser, licensee or invitee. *Corcoran* v. *Jacovino,* 161 Conn. 462, 465, 290 A.2d 225 (1971); see D. Wright, J. FitzGerald & W. Ankerman, Connecticut Law of Torts (3d Ed.) § 47, p. 109. A possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. *Warren* v. *Stancliff,* 157 Conn. 216, 218, 251 A.2d 74 (1968). In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover. Id.; see generally D. Wright, J. FitzGerald & W. Ankerman, supra, § 49. "The duty that a . . . [possessor of land] owes to a licensee, [however,] does not ordinarily encompass the responsibility to keep the property in a reasonably safe condition, because the licensee must take the premises as he finds them. *Dougherty* v. *Graham,* 161 Conn. 248, 251, 287 A.2d 382 (1971)." *Furstein* v. *Hill,* 218 Conn. 610, 624, 590 A.2d 939 (1991); see generally D. Wright, J. FitzGerald & W. Ankerman, supra, § 48. In general, however, with respect to active operations that the occupier engages in, as opposed to passive conditions on the land, "there is an obligation to exercise reasonable care for the protection of a licensee. He must . . . [for example], run his train, operate his machinery, or back his truck with due regard for the possibility that the licensee may be present. The obligation is higher than that owed to a trespasser, because the possessor may

be required to look out for licensees before their presence is discovered; but reasonable care will of course be affected by the probability that the licensee will come, whether he may be expected to follow a particular path, the time of day, and the nature of the danger." W. Prosser & W. Keeton, Torts (5th Ed.) § 60, p. 416. Additionally, as with trespassers, there is a duty to refrain from injuring a licensee "intentionally, or by willful, wanton or reckless conduct." W. Prosser & W. Keeton, supra, p. 415. As a general rule, "the possessor of real estate owes no duty to trespassers . . . to keep the property in a reasonably safe condition for their use . . . ." D. Wright, J. FitzGerald & W. Ankerman, supra, § 47, p. 110; see *Carlson* v. *Connecticut Co.,* 95 Conn. 724, 730, 112 A. 646 (1921).

We treat as licensees police officers who are on private property in the exercise of their duties. *Furstein* v. *Hill,* supra, 615–16.

"The most compelling argument for the continuing validity of the rule is the recognition that . . . police officers often enter property at unforeseeable times and may enter unusual parts of the premises under emergency circumstances. *Kreski* v. *Modern Wholesale Electric Supply Co.,* [429 Mich. 347, 368, 415 N.W.2d 178 (1987)]; *Nared* v. *School District of Omaha,* 191 Neb. 376, 379–80, 215 N.W.2d 115 (1974); 2 Restatement (Second), Torts (1965) § 345 (1), comment (c), p. 228. Such public officers enter the land regardless of the owner's consent; indeed, if the conditions for the exercise of their public duty exist, the owner would not be privileged to exclude them. *Shypulski* v. *Waldorf Paper Products Co.,* 232 Minn. 394, 396, 45 N.W.2d 549 (1951); *Scheurer* v. *Trustees of the Open Bible Church,* 175 Ohio St. 163, 168, 192 N.E.2d 38 (1963); 5 F. Harper, F. James & O. Gray, The Law of Torts (2d Ed. 1986) § 27.14, p. 260." *Furstein* v. *Hill,* supra, 616–17.

"Recognizing that only invitees may rely on an implied representation of safety, courts have considered it unreasonable to require landowners to undertake the same standard of care for public officers whose presence the landowners can neither predict nor interdict. 'There would be an obvious hardship in holding otherwise, because landowners would then be under compulsion to keep all parts of their premises in a condition perhaps uncalled for by the normal use to which the premises are devoted.' *Shypulski* v. *Waldorf Paper Products Co.,* supra, 397; see also 2 Restatement (Second), Torts (1965) § 345 (1), comment (c), p. 228." *Furstein* v. *Hill,* supra, 617.

If the licensor actually or constructively knows of the licensee's presence on the premises, however, the licensor must use reasonable care "both to refrain from actively subjecting him to danger and to warn him of dangerous conditions which the possessor knows of but which he cannot reasonably assume that the licensee knows of or by reasonable use of his faculties would observe." *Lubenow* v. *Cook,* 137 Conn. 611, 614, 79 A.2d 826 (1951); see *Corcoran* v. *Jacovino,* supra, 465. In order to establish that the defendant had constructive knowledge of the plaintiff's presence on the premises, the plaintiff must prove a level of knowledge "equivalent to actual knowledge." *Corcoran* v. *Jacovino,* supra, 468.

The seminal Connecticut decision on this issue is *Haffey* v. *Lemieux,* 154 Conn. 185, 244 A.2d 551 (1966). In *Haffey,* the plaintiff postal carrier's[2] injury was caused when a stair leading to the mailbox on the porch of the defendant's single family home collapsed. Id.,

---

[2] In *Haffey* v. *Lemieux,* 154 Conn. 185, 188, 244 A.2d 551 (1966), we stated that a postal carrier "has been generally considered to be a business visitor rather than a mere licensee." That case was tried, however, on the theory that the plaintiff, like a police officer, was a licensee, and we analyzed the defendant's duty on that assumption.

187. The evidence adduced in *Haffey* established that the defendant had resided in his home for at least six months prior to the accident and that the plaintiff had delivered the mail daily, or at least whenever there was mail, at about the same time and at a specific place. Id., 189–90. We concluded that constructive knowledge had been established because the plaintiff had visited the house with such reasonable regularity that his use of the premises was reasonably predictable. Id., 188. In arriving at this conclusion, we stated that "where, as here, the presence of the licensee at the approximate time and place of injury reasonably could, and should, be anticipated by the licensor, this should be regarded as the equivalent of actual knowledge of the licensee's presence at that time and place . . . ." Id., 189.

The plaintiff argues that the Appellate Court should have limited *Haffey's* focus upon the acts of the specific claimant to situations involving single family homes. The plaintiff contends that the *Haffey* rationale is inapplicable when the accident site is the common area of a condominium building. The plaintiff asserts that because many people, both invitees and licensees alike, utilized the common areas involved, a higher duty of care is required than that applicable to single family homes, which generally have far fewer visitors. The plaintiff maintains that this higher duty of care would involve focusing not just on himself or other police officers who may have previously visited the premises, but rather on the fact that many licensees use the premises and it was, therefore, foreseeable that some licensee, including himself, might be injured on the defective step. We disagree.

Unlike the minority of other states that have abolished distinctions between licensees and invitees in favor of the general duty of reasonable care that the plaintiff favors, we continue to adhere to the proposition that the defendant's duty is based on the entry sta-

tus of the particular person in question. See *Furstein* v. *Hill,* supra, 620–23. The prior presence of other licensees or invitees is, therefore, usually not relevant for purposes of the inquiry at hand. The prior presence of a person other than the plaintiff may, however, be relevant in cases in which such person is merely fulfilling the same function that another had previously done with reasonable regularity and predictability, e.g., a substitute or replacement postal carrier.

In this case, the plaintiff failed to establish that there was a predictable pattern of prior usage by himself or other police officers in his stead. See *Haffey* v. *Lemieux,* supra, 188–89. The plaintiff did not establish any dates for his or other officers' visits to the premises nor did he prove that he or other officers had ever been to 10 Bell Court, one of four buildings on the grounds of the complex. The plaintiff also failed to offer any evidence that any of the visits occurred after the defendant took control of the premises following their conversion from apartments to condominiums. We agree with the plaintiff that constructive notice of a victim's presence can be established without having to prove a frequency of visits akin to that of a mail carrier, but a plaintiff must still establish that the visits were reasonably regular and predictable such that they became the equivalent of actual knowledge. This the plaintiff failed to do. Although the plaintiff established that police officers had visited the premises twenty to thirty times prior to the incident, he established no pattern of regularity with respect to specific dates, times and places of their visits at the condominium complex.

The plaintiff further argues that even if a predictable pattern of use was not established, the defendant's manager, Daniel Thibodeau, expected the plaintiff or another police officer to be on the premises at the approximate time and place of the plaintiff's accident. The record fails to support this claim. On the contrary,

Thibodeau testified that he had had no reason to believe that the plaintiff or any other police officer would be at the premises at the time of the plaintiff's accident. Thibodeau's testimony, in response to a hypothetical question, that he reasonably expected the police to come to the premises and use the common areas if they were summoned for emergency aid, does not serve as an adequate basis for the plaintiff's contention that Thibodeau expected the police at the time and place in question.

The plaintiff further argues that the Appellate Court decision produces the anomalous result that trespassers, to whom a lesser duty of care is owed, may recover when their presence is only reasonably anticipated whereas the plaintiff, as a licensee, cannot recover under similar circumstances. The plaintiff cites *McPheters* v. *Loomis,* 125 Conn. 526, 533, 7 A.2d 437 (1939) (trespassing child), *Carlson* v. *Connecticut Co.,* 95 Conn. 724, 730, 112 A. 646 (1921) (adult trespassing on trolley tracks), and *Yeske* v. *Avon Old Farms School, Inc.,* 1 Conn. App. 195, 202, 470 A.2d 705 (1984) (trespassing child), to support his proposition.

As noted above, "the possessor of real estate owes no duty to trespassers . . . to keep the property in a reasonably safe condition for their use . . . ." D. Wright, J. FitzGerald & W. Ankerman, supra, § 47, p. 110; see *Carlson* v. *Connecticut Co.,* supra. The cases cited by the plaintiff, however, fall within two of the exceptions to this general rule, i.e., trespassing children and dangerous conditions on property, which recognize an associated risk of death or serious bodily harm. In these cases, a higher duty of care has been imposed on the landowner. In *Duggan* v. *Esposito,* 178 Conn. 156, 158, 422 A.2d 287 (1979), we approved of the rule stated in § 339 of the Restatement (Second) of Torts, "with respect to the liability of the possessor of property for physical harm to children." A possessor of land is liable for physical harm to child trespassers

caused by an artificial condition thereon, if, inter alia, "the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass . . . ." 2 Restatement (Second), Torts (1965) § 339. Similarly, with respect to activities highly dangerous to constant trespassers, the rule as stated in *Carlson* v. *Connecticut Co.*, supra, 730, follows the rule of § 334 of the Restatement (Second) of Torts: "A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety."

The plaintiff argues that these exceptions to the general rule with respect to trespassers impose on the possessor of land a more stringent standard of duty than that applicable to a police officer licensee because: (1) notice need only pertain to the presence of trespassers in general, not a specific party; and (2) at least with respect to the standard for trespassing children, the possessor of land need only have knowledge that the presence of children is likely rather than constructive knowledge equivalent to actual knowledge of their presence.

While there may be some overlap in the applicable duty of care owed to trespassers and licensees because of these special exceptions to the liability rules generally governing injuries to trespassers, this does not establish that the whole system of liability based on entrant status is fatally flawed or that the Appellate Court erred in holding that the defendant did not have constructive knowledge of the plaintiff's presence on the premises. Further, even if we were to use the standard for trespassing children, it is not clear that the plaintiff would have prevailed. As noted above, there

was no evidence presented that showed that any of the police officers' prior visits occurred after the defendant had taken control of the premises and, therefore, the defendant would not have had any way of knowing whether it was likely that the police officers would have been on the premises.

## II

The plaintiff next claims that even if he failed to establish constructive notice by showing a predictable pattern of prior usage, constructive notice should be assumed because, according to § 345 (2) of the Restatement (Second) of Torts, there is an exception to the general rule that licensees are not afforded the implied representation of safety given to invitees when, as here, the premises were open to the public. The exception provides that "[t]he liability of a possessor of land to a public officer or employee who enters the land in the performance of his public duty, and suffers harm because of a condition of a part of the land held *open to the public*, is the same as the liability to an invitee." (Emphasis added.) 2 Restatement (Second), Torts (1965) § 345 (2). The plaintiff argues that, although the individual condominium units are private, the common stairways and hallways should, for the purposes of this exception, be considered open to the public because they are burdened with far more traffic, both invitees and licensees, than the typical private, single family residence, and, therefore, the defendants should have reasonably anticipated the presence of licensees such as the plaintiff.

Although there is a paucity of case law on this specific issue, we approve of the result reached in *Flowers* v. *Rock Creek Terrace,* 308 Md. 432, 437–38, 520 A.2d 361 (1987), which specifically rejected a plaintiff firefighter's argument that he should be considered an implied invitee because he was injured in an area open

to the public, i.e, an apartment building's common area. The fact that common areas of a condominium complex are open to the various condominium owners does not establish that they are, as a matter of law, open to the public. In situations in which the premises have been considered open to the public, there is generally some sort of public function[3] or traditional business purpose[4] being served. Public or business functions are conspicuously absent in a private residence such as a condominium building.

The plaintiff further contends that additional support for his argument can be based on the fact that the rear entrances to the premises were unlocked. The plaintiff cites no authority, nor are we aware of any, for the proposition that an unlocked door is evidence that the premises are open to the public. Moreover, although the plaintiff relies on the reasoning found in the dissent in *Morin* v. *Bell Court Condominium Assn., Inc.*, 25 Conn. App. 112, 122, 593 A.2d 147 (1991) (*Dupont, C. J.,* dissenting), to support his proposition that the premises were open to the public, the dissent correctly concedes that common areas of condominiums are not open to the general public. That dissent's characterization of the premises as a "semipublic" area, while it may support the inference that the premises have more traffic than a single family home, does not support the proposition that they are actually open to the public. See id., 124.

---

[3] See *Brady* v. *Consolidated Rail Corporation,* 35 Ohio St. 3d 161, 163–64, 519 N.E.2d 387 (1988) (affirming reversal of summary judgment in favor of the defendant railroad corporation because the plaintiff police officer was injured in a railroad right-of-way through a public sidewalk that the defendant was statutorily obligated to keep in good repair for the benefit of all members of the public).

[4] The Restatement (Second) of Torts, § 345 (2), illustration five, offers as an example of premises open to the public a department store during business hours.

The judgment of the Appellate Court is affirmed.

In this opinion PETERS, C. J., CALLAHAN and BORDEN, Js., concurred.

BERDON, J., dissenting. I agree with the well reasoned dissent of Chief Judge Dupont of the Appellate Court in *Morin* v. *Bell Court Condominium Assn., Inc.*, 25 Conn. App. 112, 118–26, 593 A.2d 147 (1991). Accordingly, I respectfully dissent.