[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The plaintiff in this case was a police officer on February 21, 1989. On that date the defendants John Fecke, Jr. and William Fischer owned property at 370 Sackett Point Road. They had owned CT Page 4082-H the premises for about eleven years and rented it out to two businesses. While on patrol on the evening of February 21st the officer claims he noticed a flashing light in the building on these premises and became suspicious because the building was closed. He left his cruiser to inspect the premises and walked to the left of the building around to the back to further investigate the situation. In his deposition he said as he was checking rear entrances he stepped into a depression which he now claims caused him injury and has led to the filing of this suit.
The defendants have now filed a motion for summary judgment. The posture of the defendants at this point of the proceedings appears to be that for the purposes of argument they will accept the plaintiff's just referred to factual allegations as true. However they deny liability on the basis of an affidavit of Mr. Fischer, the co-defendant is now deceased. In the affidavit Mr. Fischer states he had no knowledge of the plaintiff's presence at 370 Sackett Point Road on the date of the plaintiff's fall. He also states he had no reason to anticipate the presence of this officer on the premises. He further says that he had no knowledge of the alleged depression in the ground which the plaintiff claims led to his fall and resulting injuries. Mr. Fischer also swears that "upon information and belief Mr. John Fecke, Jr., now deceased, had no knowledge of the plaintiff's presence on their property on the evening when the officer fell. The rules for granting or not granting motions for summary judgment are well known. The court must determine whether there is a genuine ISSUE of material fact, if there is the court cannot decide it since if it did so the court would in effect be depriving a person to his or her right to a jury trial.
Both sides agree that the plaintiff was a licensee. Morin v.Bell Court Condominium Assn., Inc., 223 Conn. 323, 330-31 (1992) made clear that our state still adheres to the rule that the defendant's duty to people who enter on his or her premises is based on the entry status of the particular person, trespasser, licensee or invitee. The court also said: "We will treat as licensees police officers who are on private property in the exercise of their duties." Id. page 328, following Furstein v.Hill, 218 Conn. 610, 615-16 (1991).
The Morin case at pages 329 to 334 discusses the rules to be applied in these cases. If a person who is a licensee enters premises and the owner has actual knowledge of that individual's presence the owner has a duty to warn the licensee of dangerous conditions which the possessor knows about but which the possessor CT Page 4082-I cannot reasonably assume that the licensee knows or by reasonable use of his or her faculties would observe Id. page 329. Here there was a depression in a pathway leading to rear entrances. And it was nighttime. If the defendant owners knew this officer was on the premises to investigate possible criminal activities, there would certainly be a prima facie case for liability precluding the granting of a motion for summary judgment in the defendants' behalf.
But the defendants maintain and the plaintiff cannot seriously contest that the owners had no actual knowledge of the officer's presence on their premises on the night of his injury. In order to establish a case of liability then the plaintiff must establish that the defendants had constructive knowledge of the plaintiff's presence on the premises. To show constructive knowledge "the plaintiff must prove a level of knowledge `equivalent to actual knowledge'", 223 Conn. at p. 329, citing Corcoran v. Jacovino,161 Conn. 462, 468 (1971). The Morin court described Haffey v.Lemieux, 154 Conn. 185 (1966) as the "seminal Connecticut decision". There a letter carrier fell on a defective step on the defendant's premises. He had to ascend and descend these steps to put the mail in the mailbox. The court noted the defendant had lived at the house for several months prior to the injury and knew or should have known mail was delivered to his mailbox by a letter carrier who had to use his stairs. In Haffey the defendant knew of the disintegrating condition of the stairs and the jury could infer the defendant could not reasonably assume the plaintiff letter carrier, was aware of the condition, Id. pp. 190-91.
The Morin court adopted the Haffey definition of "constructive knowledge" saying it is the equivalent of actual knowledge.
 . . . where, as here, the presence of the licensee at the approximate time and place of I injury reasonably could and should be anticipated by the licensor, this should be regarded as the equivalent of actual knowledge of the licensee's presence at that time and place, 154 Conn. at page 189.[1]
The court in Morin goes on to refine Haffey. In Morin a police officer was responding to a radio dispatch informing him of a fire at a condominium complex which consisted of four buildings. The officer went to one of the buildings, entered the rear entrance and proceeded to warn the occupants to leave. In descending from CT Page 4082-J the third to the second floor the plaintiff fell on a defective stair and was injured.
The Morin court made the following comments at page 331, distinguishing it from Haffey:
 In this case, the plaintiff failed to establish that there was a predictable pattern of prior usage by himself or other police officers in his stead. See Haffey v. Lemieux, supra, 188-89. The plaintiff did not establish any dates for his or other officers visits to the premises nor did he prove that he or other officers had ever been to 10 Bell Court, one of four buildings on the grounds of the complex. The plaintiff also failed to offer any evidence that any of the visits occurred after the defendant took control of the premises following their conversion from apartments to condominiums. We agree with the plaintiff that constructive notice of a victim's presence can be established without having to prove a frequency of visits akin to that of a mail carrier, but a plaintiff must still establish that the visits were reasonably regular and predictable such that they became the equivalent of actual knowledge. This the plaintiff failed to do. Although the plaintiff established that police officers had visited the premises twenty to thirty times prior to the incident, he established no pattern of regularity with respect to specific dates, times and places of their visits at the condominium complex.
There are certain differences between the facts in this case and the Morin case. Here the plaintiff submitted an affidavit with copies of original police records which indicated that at specific dates and times from 1981 to February 1989 the police department responded to the Sackett Point Road premises. All of these seventeen visits occurred after the defendants acquired control of the premises. Several of these police visits involved responses to burglar alarms which apparently were called into the police by security companies. This officer in his affidavit indicated that when he checked the security of a building, as he did on the night of his injury he would exit his CT Page 4082-K car and check the doors of the establishment. I do not know if there is a police manual indicating all doors of a building should be checked if a burglar alarm goes off or there is suspicious activity at night time but I think that common sense would dictate that course of action to a police officer. Neither is it far fetched to say that any person concerned with the security of his or her building would expect the police to act in that manner — go around and check all the doors to see if there has been entry or an attempt to gain entry.
In that regard the frequency of prior visits to the premises by the police should be viewed in terms of the fairness of placing an obligation on an owner to see that at least certain portions of his or her premises are not unsafe. In Morin the officer entered one of four buildings in a condominium complex and fell on an should not be treated merely as licensees thus requiring a higher standard of care the court quoted from cases in other states and said some instructive things, I believe, which should have a bearing on the concept of constructive knowledge of a police officer's presence on premises, 223 Conn. at pp. 328-29.
 The most compelling argument for the continuing validity of the rule is the recognition that police officers often enter property at unforeseeable times and may enter unusual parts of the premises under emergency circumstances. Such public officers enter the land regardless of the owner's consent; indeed if the conditions for the exercise of their public duty exist, the owner would not be privileged to exclude them. Recognizing that only invitees may rely on an implied representation of safety courts have considered it unreasonable to require landowners to undertake the same standard of care for public officers whose presence the landowners can neither predict nor interdict. There would be an obvious hardship in holding otherwise, because landowners would then be under compulsion to keep all parts of their premises in a condition perhaps uncalled for by the normal use to which the premises are devoted.
Here if the plaintiff were to be allowed to go to the jury they would not be imposing on the owners a standard of care CT Page 4082-L requiring them as with invitees, to keep the entire premises safe for use by the entrants — as with an internal stair in Morin. Here the owners should be held to know or have reason to know that their tenants have alarm systems and that police officers regularly patrol and respond to suspicious activity regarding their buildings. Why shouldn't the plaintiff at least have the opportunity to argue for the existence of constructive knowledge in situations where the owners knew or should have known that in conducting security checks for their benefit and that of their tenants officers would necessarily check all means of access to a building — under such circumstances if the owner knew (or perhaps should have known) of a defect which made this task dangerous why shouldn't this be held to be constructive knowledge?
This is why I think the reasonably regular and predictable visit requirement to meet the constructive knowledge test of Morin
is really a function of deciding whether it's fair to impose a duty on the owner as regards particular defects. If the test is not based on the fairness of allocation of risks given a particular factual setting what on earth does the test mean? — seven times a week is perfect, once a week maybe, once a month never — why would any result be fair or unfair if mechanical frequency is the only criteria?
The frequency or predictability requirement should be relaxed at least in a situation where the owner knows or should know police officers have reason to go on the premises for the owner or the tenant's benefit and when they do so they are likely to follow certain routes of travel and go to certain areas where the owner knows or should know danger to the officers exists. The owner presented no affidavit to the effect that he did not realize police had gone on the premises for security purposes or that he would not expect them to go on his premises for such purposes.
This is a close case and the plaintiff may have a difficult time prevailing but I'm reluctant to say such a case does not present an issue of fact and should not be presented to a jury. The motion for summary judgment is denied.