[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I
 PROCEDURAL HISTORY
On November 1, 2000, the plaintiffs, Vladimir Shapiro and Gina Shapiro, filed a four-count complaint against the defendants, Hillside Village Condominium Association, Inc. (Hillside), Alex Braylyan and David Braylyan. This action arises out of an alleged incident that occurred on October 17, 1998 at a party hosted by the defendant Alex Braylyan. While at this party, the plaintiff Vladimir Shapiro was allegedly stabbed in the abdomen, stomach and both lower extremities by an unknown assailant. The party took place in the clubhouse located at the Hillside Village Condominiums. This facility is owned by the defendant condominium association and was rented for the evening of the party by Alex Braylyan and his father David Braylyan, who are the owners of a condominium at Hillside Village.
Count one of the complaint is directed towards Hillside and alleges that Vladimir Shapiro's injuries were caused by Hillside's negligence in that, inter alia, it did not provide a sufficient number of adequately trained staff to control those in attendance at the party, it failed to warn the plaintiff of the possibility of being harmed by the assailant, it failed to ensure the safety of the plaintiff while on the premises, and it failed to exercise due care to prevent or decrease the risk of assault upon the plaintiff. Count two is directed toward Alex Braylyan and alleges negligence, inter alia, in that he allowed the premises to become overcrowded with unruly people, he did not provide adequate crowd control, he failed to warn the plaintiff of the possibility of being harmed by the assailant, he failed to ensure the safety of the plaintiff while on the premises, and he failed to exercise due care to prevent or decrease the risk of assault upon the plaintiff. Count three is directed towards David Braylyan and alleges, in pertinent part, that he rented out the facilities and that he negligently entrusted the clubhouse area of CT Page 3339 the premises to his son, Alex Braylyan. The fourth count of the complaint is brought by Gina Shapiro, wife of Vladimir Shapiro, against all the defendants and claims loss of consortium.
Motion for Summary Judgment #114
On October 2, 2001, Hillside filed a motion for summary judgment on the ground that, as a matter of law, Hillside owes no duty to Vladimir Shapiro. In support of its motion, Hillside submits a memorandum of law, a copy of the complaint, a copy of the Braylyans' answers to Hillside's request for admissions, and a copy of a sample clubhouse rental agreement. On November 27, 2001, Hillside filed a supplemental memorandum with an affidavit of Joseph Cieplak, who was the president of the Hillside Village Condominium Association on the date the incident in question occurred, attesting that the sample rental agreement was the same as that executed by the parties. In its memorandum of law, Hillside argues that it owed no duty to Vladimir Shapiro because it was not foreseeable that he would suffer the type of harm alleged as a result of its actions. Hillside claims that there is no evidence to suggest that it could have anticipated that Shapiro would be attacked by an unknown assailant, and that all responsibility for controlling the party belonged to Alex Braylyan and David Braylyan.
Motion for Summary Judgment #125
On October 21, 2002, the Braylyans also filed a motion for summary judgment on the ground that a social host owes its guests no duty to protect them from an unknown or unidentified assailant where the conduct of said assailant is completely unforeseeable. In support of their motion, the Braylyans submit a memorandum of law, a sample clubhouse rental agreement, an uncertified deposition transcript of Vladimir Shapiro, an uncertified deposition transcript of Alex Braylyan, a certified deposition transcript of David Braylyan, and an uncertified deposition transcript of Gene Zeldin.[1] The Braylyans similarly argue that they had no duty to protect Shapiro from the acts of an unknown assailant because no special relationship existed between themselves and Shapiro. They also argue that it would be a violation of public policy to require them to ensure the safety of all who attended their private party.
On November 8, 2002, Shapiro filed a single opposition as to both motions for summary judgment. In support of his argument, Shapiro submits a memorandum of law, a copy of a clubhouse rental agreement, an uncertified deposition transcript of Alex Braylyan, and an uncertified deposition transcript of Vladimir Shapiro.[2] In opposition, Shapiro CT Page 3340 argues that summary judgment should not be granted because his injuries were foreseeable and thus he was owed a duty. Specifically, he argues that Hillside would not have required a certificate of insurance, nor would it have charged a fee for the use of the facility if it did not anticipate a possible risk of harm. With regard to the Braylyans, Shapiro argues that they anticipated a possible risk of harm because they were aware of the nature of the gathering and they requested several friends to act as security for the party.
Neither Hillside, the Braylyans nor Shapiro have proferred any arguments, however, concerning the status of Shapiro while attending the party. Because status determines whether one is owed a duty while on the premises of another, as well as the scope of that duty, it must be addressed before reaching the issue of the foreseeability of the harm.
 II DISCUSSION
"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. (Citations omitted; internal quotation marks omitted.) Gaynor v.Payne, 261 Conn. 585, 590, 840 A.2d 170 (2002). "[T]he `genuine issue' aspect of summary judgment requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred . . . A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Citation omitted; internal quotation marks omitted.) Buell Industries, Inc. v.Greater New York Mutual Ins. Co., 259 Conn. 527, 556, 791 A.2d 489
(2002). "Summary judgment procedure is especially ill-adapted to negligence cases, where . . . the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation . . . [T]he conclusion of negligence is necessarily one of fact . . ." (Citations omitted; internal quotation mark omitted.) Michaud v. Gurney, CT Page 3341168 Conn. 431, 434, 362 A.2d 857 (1975).
"In a negligence action, the plaintiff must meet all of the essential elements of the tort in order to prevail." LaFlamme v. Dallessio,261 Conn. 247, 251, 802 A.2d 63 (2002). "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury . . . Contained within the first element, duty, there are two distinct considerations . . . First, it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty." (Internal quotation marks omitted.) Baptiste v. Better Val-U Supermarket, Inc.,262 Conn. 135, 138, 811 A.2d 687 (2002).
"Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action." (Internal quotation marks omitted.) LaFlamme v. Dallessio,supra, 261 Conn. 251. Ordinarily the determination of whether a duty exists is a question of law, however, "under some circumstances, the question involves elements of both fact and law." Id. The duty owed by a landowner to one injured while on his premises depends on the status of the injured party. "Ordinarily, the status of one who sustains injury while upon the property of another is a question of fact . . . Where, however, the facts essential to the determination of the plaintiff's status are not in dispute, a legal question is presented." (Citations omitted.) Roberts v. Rosenblatt, 146 Conn. 110, 112, 148 A.2d 142
(1959). See also Kolaniak v. Board of Education, 28 Conn. App. 277, 282,610 A.2d 193 (1992).
"In general, there is an ascending degree of duty owed by the possessor of land to persons on the land based on their entrant status, i.e., trespasser, licensee or invitee." Morin v. Bell Court CondominiumAssociation, Inc., 223 Conn. 323, 327, 612 A.2d 1197 (1992). A trespasser is one who enters upon land without the consent of the possessor to do so. "It is well established that a possessor of land is under no duty to keep his or her land reasonably safe for an adult trespasser, but has the duty only to refrain from causing injury to a trespasser intentionally, or by willful, wanton or reckless conduct." (Internal quotation marks omitted.) Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 558,707 A.2d 15 (1998). A licensee, on the other hand, "is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission." (Internal quotation marks omitted.) Salaman v. Waterbury, 246 Conn. 298, 305, 717 A.2d 161
(1998). A licensee must take the premises as he finds them, and the landowner therefore has no responsibility to keep the property in a reasonably safe condition. Id. With regard to active operations on the CT Page 3342 property, however, "there is an obligation to exercise reasonable care for the protection of the licensee." (Internal quotation marks omitted.)Morin v. Bell Court Condominium Association, Inc., supra, 223 Conn. 327.
Invitees are accorded the highest standard of care. "A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land." (Internal quotation marks omitted.) Kurti v. Becker,54 Conn. App. 335, 338, 933 A.2d 916, cert. denied, 251 Conn. 909,739 A.2d 1248 (1999). "A possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe." Morin v. Bell Court Condominium Association, Inc.,supra, 223 Conn. 327. General Statutes § 52-557a provides that a social invitee is owed the same standard of care as a business invitee. "The distinction between one who is an invitee and one who is merely a licensee turns largely on whether the visitor has received an invitation, as opposed to permission, from the possessor of land, to enter the land or remain on the land." (Internal quotation marks omitted.) Kurti v. Becker, supra, 54 Conn. App. 338.
"Existing Connecticut precedents impose only a limited duty to take action to prevent injury to a third person. Our point of departure has been that absent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another." (Internal quotation marks omitted.) Fraser v. United States, 236 Conn. 625, 632,674 A.2d 811 (1996). According to 2 Restatement (Second), Torts § 315, p. 122 (1965), "[t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection." A special relationship may arise where one in possession of land allows a third person to use that land. Section 318 of the Restatement of Torts provides that a possessor of land is "under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the [possessor of land] (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercise such control. 2 Restatement (Second), supra, § 318 p. 126-27.
In the case of Merhi v. Becker, 164 Conn. 516, 325 A.2d 270 (1973), the plaintiff was a paying guest at an outdoor picnic sponsored by the CT Page 3343 defendant. The plaintiff, who the court determined had the status of an invitee, was injured when one of the guests became intoxicated and struck the plaintiff with his car. The court held that the defendant, as the possessor of the land and host of the party, "must exercise the power of control or expulsion which his occupation of the premises gives him over the conduct of a third person who may be present, to prevent injury to the visitor at his hands. He must act as a reasonable man to avoid harm . . . even from intentional attacks on the part of such third persons." (Internal quotation marks omitted.) Id., 520.
Whether the Braylyans or Hillside owed a duty to Shapiro to protect him from the acts of an unknown assailant is dependent upon his status while on the premises owned by Hillside and controlled by the Braylyans. If Shapiro was a trespasser, then he was owed only a very limited duty. If Shapiro was a licensee or an invitee, then a different duty exists, and it must be determined whether the defendants' actions comported with the relevant standard of care. Genuine issues of material fact exist because the movants have not provided sufficient evidence to exclude any real doubt as to Shapiro's status.
There is evidence from which it could be determined that Shapiro was not an invited guest of the party hosted by Alex Braylyan. In the Braylyans' answers to Hillside's request for admissions, the Braylyans admit that Shapiro was not an invited guest of the party held at the clubhouse on October 17, 1998. (Hillside's Memorandum of Law, dated September 26, 2001, Exhibit B.) Furthermore, in deposition testimony, David Braylyan has stated that Shapiro was not invited to his son's party. (Braylyans' Memorandum of Law, dated October 19, 2002, Exhibit C.) Shapiro has presented no countervailing evidence to show that he in fact was invited to the party.
Despite this evidence, however, Hillside and the Braylyans have failed to provide sufficient evidence to establish that Shapiro's status was not that of a licensee. Even if Shapiro had not received an invitation to the party, as the requests for admission and deposition tend to show, the determination could still be made that he had permission to be on the premises. As a licensee, Shapiro would be owed a duty of reasonable care for all activities taking place on the property. Proof that Shapiro was not invited does not in turn establish that he was a trespasser to whom no duty was owed. Because genuine issues of material fact exist as to Shapiro's status, summary judgment is denied as to both Hillside and the Braylyans.
 III CT Page 3344 CONCLUSION
For the reasons stated, the court denies the summary judgment motions of the Braylyans and Hillside.
 By the Court Peter Emmett Wiese, Judge March 7, 2003