JACK MILLETTE *v.* CONNECTICUT POST LIMITED
PARTNERSHIP ET AL.
(AC 34059)

Gruendel, Robinson and Alvord, Js.

Argued January 15—officially released May 28, 2013

*Robert M. Shields, Jr.*, with whom were *Brendon P. Leveque* and, on the brief, *Ronald LoRicco* and *Nicole Tung*, for the appellant (named plaintiff).

*Richard W. Bowerman*, with whom were *Kate J. Boucher* and, on the brief, *Elizabeth K. Acee*, for the appellees (named defendant et al.).

*Opinion*

ROBINSON, J. In this premises liability action, the plaintiff Jack Millette appeals from the judgment rendered by the trial court in accordance with its decision granting a motion for judgment notwithstanding the verdict filed by the defendants Connecticut Post Limited Partnership, Connecticut Post Mall, LLC, and Westfield Corporation, Inc., doing business as Westfield Design and Construction.[1] The plaintiff claims that (1) the court improperly determined that he had failed to produce sufficient evidence from which the jury reasonably could have found that the defendants were in possession and control of the precise area where the plaintiff was injured, and (2) even if there was no evidence to support a jury finding that the defendants

---

[1] Metroguard, Inc., Millette's employer, was permitted to intervene in the action as a party plaintiff to recover workers' compensation benefits paid to Millette, but has not participated in this appeal. The complaint also named National Amusements, LLC, as an additional defendant, however, the action was withdrawn as to it prior to trial. We therefore refer in this opinion to Millette as the plaintiff and to the remaining defendants, Connecticut Post Limited Partnership, Connecticut Post Mall, LLC, and Westfield Corporation, Inc., doing business as Westfield Design and Construction, collectively as the defendants.

had possession and control, liability nevertheless could attach pursuant to the nondelegable duty doctrine. We disagree and affirm the judgment of the court.[2]

Among those facts that the jury reasonably could have found from the evidence are the following: The defendants are the owners of the Connecticut Post Mall (mall) in Milford. In 2006, the mall was undergoing an expansion that included the construction of a movie theater. Metroguard, Inc. (Metroguard), was hired to provide security for the construction site, including keeping out unauthorized persons and preventing the theft of tools and other property from the construction site.[3] The plaintiff was a security guard who was employed by Metroguard and assigned to duty at the mall construction site. On February 27, 2006, the plaintiff reported for his second day of work at the construction site. While returning with a coworker from inspecting a parking area adjacent to the construction site, he ascended a stairway that led from the parking

---

[2] The plaintiff also claims that the court improperly determined that he had failed to provide sufficient evidence from which the jury reasonably could have found that the defendants had constructive notice of the alleged unsafe condition or that the defendants' negligence proximately caused the plaintiff's injuries. Because we conclude that the court properly directed a verdict for the defendants due to insufficient evidence of the defendants' possession and control of the premises, it is not necessary to address the merits of those additional claims.

[3] The evidence presented at trial failed to establish who had hired Metroguard to provide security for the construction site. The owner of Metroguard testified that he did not know who had hired his company. When the plaintiff was asked who hired Metroguard he first testified, "I guess Connecticut Mall," but later agreed on cross-examination that he did not know who had hired Metroguard and only knew that he was supposed to report to the mall for duty. A report that was made by a mall security officer shortly after the incident and that was made a full exhibit at trial contained the following statement: "Metroguard is an outside hired contractor for D & C Construction . . . ." When the mall's general manager was asked at trial whether D & C Construction was working under Westfield Design and Construction, he answered: "I don't know." No additional evidence was presented explaining who D & C Construction was or its relationship to any of the other parties involved.

area to the construction site. The stairway was covered by scaffolding, and plastic strips or sheeting hung from the scaffolding at the top of the stairway, dividing the stairway from the hallway beyond. The plaintiff, while moving aside the hanging plastic and stepping through the resultant opening and under the scaffolding, slipped or tripped and fell forward onto the concrete floor. The plaintiff, who was 62 years old at the time of the fall, fractured his wrist. His injuries required two surgeries and resulted in medical bills totaling approximately $54,000.

The plaintiff filed the present personal injury action against the defendants alleging that they were negligent in failing to keep the area where he had fallen in a safe condition, in failing to inspect the area and in failing to correct or to warn of the hazardous condition of the area. The matter was tried before a jury beginning on October 18, 2011. In addition to the testimony of the plaintiff, the jury heard testimony from three additional witnesses: the owner of Metroguard, the coworker who was present at the time the plaintiff fell and the mall's general manager. After the plaintiff had presented his case to the jury and had rested, the defendants filed a motion for a directed verdict and a memorandum in support thereof with the court. According to the defendants, the plaintiff had failed to offer sufficient evidence to satisfy his burden of establishing that the defendants had control of the area where the fall occurred at the time of the plaintiff's injuries, that they had notice of the alleged hazardous condition or that the alleged hazardous condition was the proximate cause of the plaintiff's injuries. After hearing argument, the court reserved its decision on the defendants' motion. The defendants then rested without presenting any additional evidence.

The matter was submitted to the jury, which returned a verdict on October 20, 2011, in favor of the plaintiff.

The jury found that the plaintiff had proven economic damages of $122,897 and noneconomic damages of $381,000, for a total of $503,897 in damages. The jury also found that the plaintiff was 20 percent comparatively negligent for his injuries, thereby reducing the total recoverable damages to $403,117.60.

The defendants filed a motion for judgment notwithstanding the verdict, renewing their earlier motion for a directed verdict. They also filed a motion for remittitur and a motion to set aside the verdict. The plaintiff filed oppositions to the defendants' postverdict motions. On November 10, 2011, the court issued a memorandum of decision granting the motion for judgment notwithstanding the verdict and directing a verdict in favor of the defendants. In so ruling, the court stated that the plaintiff had failed to offer any evidence "to prove the defendants were in control over the area where the fall occurred" and that "[t]he evidence did not establish [that] the defendants had any knowledge or involvement with the conditions related to the fall."[4] This appeal followed.

Before turning to the plaintiff's claim, we first set forth the relevant standard of review. The standard governing our review of a motion for judgment notwithstanding the verdict is the same as the standard applied to a court's decision to direct a verdict "because a motion for judgment notwithstanding the verdict is not a new motion, but the renewal of a motion for a directed verdict." (Internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 255 Conn. 390, 400, 766 A.2d 416 (2001). "Whether the evidence presented by the plaintiff was

[4] The court issued a separate memorandum of decision addressing the motion to set aside the verdict and the motion for remittitur in which it "reserve[d] decision" on those motions. In doing so, it reiterated: "In this case the court finds inadequate evidence to establish by a fair preponderance of the evidence of control, a specific defect and notice of any alleged defect by the defendants."

sufficient to withstand a motion for a directed verdict is a question of law, over which our review is plenary. . . . Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision to direct a verdict in favor of a defendant we must consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party. . . . This court has emphasized two additional points with respect to motions to set aside a verdict that are equally applicable to motions for a directed verdict: First, the plaintiff in a civil matter is not required to prove his case beyond a reasonable doubt; a mere preponderance of the evidence is sufficient. Second, the well established standards compelling great deference to the historical function of the jury find their roots in the constitutional right to a trial by jury." (Internal quotation marks omitted.) *Demiraj* v. *Uljaj*, 137 Conn. App. 800, 804–805, 50 A.3d 333 (2012).

I

The plaintiff claims that the court improperly granted the motion for judgment notwithstanding the verdict and directed a verdict in favor of the defendants on the basis of the plaintiff's purported failure to produce sufficient evidence from which the jury reasonably could have found that the defendants were in control of the area where the plaintiff fell. In his appellate brief, the plaintiff cites to what he claims was evidence from which the jury could have inferred that the defendants were in possession and control of the construction site at the time of his injuries, and he argues that the court

exceeded its authority by substituting its judgment for that of the jury. The defendants argue that instead of offering evidence that they or their agents "had the power or authority to manage, superintend, direct, oversee, restrict or regulate [the construction] site" where the injuries occurred, the plaintiff chose to meet his burden of establishing the defendants' control over the construction site by relying "on the sole fact that the [defendants] are the title owners of the [mall]." The defendants further argue that because legal title to defective premises is not sufficient proof of control of the premise, the court properly directed a verdict in their favor. Having reviewed the evidence that was presented at trial in the light most favorable to the plaintiff, we conclude that the court properly directed a verdict in favor of the defendants.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . If a plaintiff cannot prove all of those elements, the cause of action fails." (Internal quotation marks omitted.) *Gurguis* v. *Frankel*, 93 Conn. App. 162, 167, 888 A.2d 1083, cert. denied, 277 Conn. 916, 895 A.2d 789 (2006). In the case of a negligence action grounded upon a theory of premises liability, the nature of the duty owed to a plaintiff depends upon the plaintiff's status on the premises at the time of the alleged injury. See *Morin* v. *Bell Court Condominium Assn., Inc.*, 223 Conn. 323, 327, 612 A.2d 1197 (1992). In the present case, the court instructed the jury that the plaintiff's status on the premises at the time of his injuries was that of a business invitee.[5] "A

[5] "Ordinarily, the status of one who sustains injury while upon the property of another is a question of fact. . . . Where, however, the facts essential to the determination of the plaintiff's status are not in dispute, a legal question is presented." (Citations omitted.) *Morin* v. *Bell Court Condominium Assn., Inc.*, 25 Conn. App. 112, 115, 593 A.2d 147 (1991) (holding court properly instructed jury with respect to entrant status of plaintiff as matter of law on basis of undisputed facts), aff'd, 223 Conn. 323, 612 A.2d 1197 (1992). The parties did not challenge the court's characterization of the plaintiff's status at trial, nor do they do so on appeal.

possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. . . . In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover." (Citation omitted.) Id.; see also 2 Restatement (Second), Torts § 343 (1965).

Such a duty of care to an invitee, however, only attaches if the defendant exercised possession and control over the area at the time and place the injury occurred. See *Farlow* v. *Andrews Corp.*, 154 Conn. 220, 225, 224 A.2d 546 (1966); accord 2 Restatement (Second), supra, § 328E, p. 170 (defining "possessor of land" for purposes of premises liability as one "in occupation of the land with intent to control it"). "[L]iability for injuries caused by defective premises . . . does not depend on who holds legal title, but rather on who has possession and control of the property. . . . Thus, the dispositive issue in deciding whether a duty exists is whether the [defendant] has any right to possession and control of the property. . . . Retention of control is essentially a matter of intention to be determined in the light of all the significant circumstances. . . . The word control has no legal or technical meaning distinct from that given in its popular acceptation . . . and refers to the power or authority to manage, superintend, direct or oversee." (Citation omitted; internal quotation marks omitted.) *Sweeney* v. *Friends of Hammonasset*, 140 Conn. App. 40, 50, 58 A.3d 293 (2013); see also *Farlow* v. *Andrews Corp.*, supra, 225; *Ziulkowski* v. *Kolodziej*, 119 Conn. 230, 233, 175 A. 780 (1934) (defective premises liability "ordinarily depends upon power to prevent the injury by making repairs, and therefore rests primarily upon him who has control and possession").

"The general rule is that where the owner of premises employs an independent contractor to perform work on them, the contractor, and not the owner, is liable

for any losses resulting from negligence in the performance of the work. . . . The basic premise is that the assumption and exercise of control over the offending area is deemed to be in the independent contractor. . . . The explanation for [this rule] most commonly given is that, since the [owner] has no power of control over the manner in which the work is to be done by the contractor, it is to be regarded as the contractor's own enterprise, and [the contractor], rather than the [owner], is the proper party to be charged with the responsibility of preventing the risk, and bearing and distributing it. . . .

"Exceptions to that rule arise when the employer retains control of the premises or supervises the work of the contractor, or where the work to be performed by the contractor is inherently dangerous, or where the employer has a nondelegable duty to take safety precautions imposed by statute or regulation . . . ." (Citations omitted; internal quotation marks omitted.) *Mozeleski* v. *Thomas*, 76 Conn. App. 287, 291–92, 818 A.2d 893, cert. denied, 264 Conn. 904, 823 A.2d 1221 (2003). Accordingly, in order to satisfy his burden of proof as to the duty element of the cause of action alleged, the plaintiff needed to establish by a preponderance of the evidence that the defendants retained control over the construction site where the plaintiff fell.

The evidence presented at trial established that the plaintiff was injured while working at the mall construction site, but there was no evidence presented as to who had control of that site at the time the plaintiff fell. The plaintiff testified that there were painters, plumbers, electricians, masons and carpenters working at the site when he fell, but he was unable to identify any specific companies or individuals responsible for the work being performed. No evidence was presented as to who erected the scaffolding or hung the plastic on the stairs where the plaintiff fell. No testimony or

documentary evidence was introduced at trial from which the jury reasonably could have inferred who was responsible for the oversight of the construction site in general, let alone the specific area where the plaintiff fell. No evidence was presented identifying the parties involved in the construction work being performed at the site or who ultimately controlled the day-to-day operations. In sum, there was no evidence introduced from which the jury reasonably could have inferred who had control over the construction site at the time that the plaintiff fell. Instead the jury was left to speculate about whether the defendants had overseen and performed the construction work on their property with their own employees, whether they had employed a general contractor to oversee the construction or whether they had hired and overseen a number of independent contractors.

The plaintiff nevertheless argues in his appellate brief that there was sufficient evidence from which the jury reasonably could have concluded that the defendants possessed and controlled the area where the plaintiff fell. The plaintiff first contends that the "most significant" evidence of control is found in the defendants' responses to certain requests for admission that were filed as part of discovery by the former codefendant, National Amusements, LLC. See Practice Book §§ 13-22 and 13-24. Specifically, the plaintiff notes that the defendants admitted that "[a]t the time and place of the alleged event referenced in the plaintiff's revised complaint, one or more of the codefendants against which these requests for admission are filed was performing or had its agent performing ongoing construction activities."[6] According to the plaintiff, the

---

[6] We note that as part of their response, the defendants continued: "It is further admitted agents for National Amusements, LLC, were also performing ongoing construction activities at the time and place of the alleged event referenced in the plaintiff's revised complaint." In the same requests for admission, the defendants also denied a request for an admission that

defendants' "admitted construction activity on their own property is inconsistent with the trial court's finding of no possession or control in the area where the plaintiff fell." Even if we agreed with the plaintiff that the defendants' admission that they or their agents were "performing ongoing construction activities" constituted some evidence from which a jury permissibly might infer that the defendants' retained control over the area where the plaintiff fell, the admissions were never submitted as evidence at trial or otherwise brought to the attention of the jury as the finder of fact, and, therefore, the admissions properly were not considered by the court in deciding whether to direct a verdict in favor of the defendants. See *Falcone* v. *Night Watchman, Inc.*, 11 Conn. App. 218, 219 n.1, 526 A.2d 550 (1987).

The plaintiff next makes several factual statements that include references to portions of the testimony by the mall's general manager. In particular, the plaintiff mentions the manager's testimony that the area where the plaintiff fell has always been a common area entrance to the mall that never would be devised to a specific tenant. The plaintiff states without citation to the record that "[d]uring the construction phase when the plaintiff fell, it was readily accessible to the construction workers, security officers, movie theater employees and mall personnel and others entitled to enter." Finally, the plaintiff makes reference to the manager's testimony agreeing with the plaintiff's counsel that, during construction, the defendants still would have had access to the construction site. The plaintiff fails to provide any analysis explaining how any of those factual assertions are relevant to the issue of whether the defendants controlled the area where he fell during

one or more of the defendants "possessed and/or controlled" the location of the alleged incident at the time the incident occurred.

the construction phase, nor can we discern any such relevancy.

Finally, the plaintiff suggests in rather conclusory fashion that the fact that a mall security officer was called to the accident scene, interviewed the plaintiff and his coworker and filled out an incident report was "yet another indication that the . . . defendants continued to exercise possession and control over the entire [mall], including the area where [the] plaintiff fell." The evidence at trial, however, indicated that regular mall security was not responsible for security at the construction site; that was, in fact, the responsibility of the plaintiff's employer, Metroguard. There was no evidence that mall security patrolled the construction site in any manner, and, as to the incident with the plaintiff, the security officer only appeared several hours after the incident at the request of the parties involved. We do not regard the security officer's actions as having any bearing on whether the defendants possessed and controlled the area where the plaintiff fell. On the basis of our independent review, we agree with the trial court that there was insufficient evidence presented from which the jury reasonably could have based a finding of control.

## II

The plaintiff makes the additional claim that even if we determine on the basis of our plenary review that the evidence presented was insufficient to support a finding by the jury that the defendants were in control of the premises, the defendants nevertheless still could be found liable pursuant to the nondelegable duty doctrine. The defendants maintain that the nondelegable duty doctrine is not applicable to this matter. We agree with the defendants.

"Nondelegable duties generally are imposed, most often by statute, contract or common law, in recognition

of the policy judgment that certain obligations are of such importance that employers should not be able to escape liability merely by hiring others to perform them. . . . In such circumstances, the nondelegable duty doctrine means that [the employer] may contract out the performance of [its] nondelegable duty, but may not contract out [its] ultimate legal responsibility." (Citation omitted; internal quotation marks omitted.) *Machado* v. *Hartford*, 292 Conn. 364, 371–72, 972 A.2d 724 (2009); see also *Gazo* v. *Stamford*, 255 Conn. 245, 255, 765 A.2d 505 (2001) (nondelegable duty doctrine means party with duty may not absolve itself of liability by contracting out performance of duty). "[T]he owner or occupier of a premises owes a nondelegable duty to keep the premises safe by protecting third persons from foreseeable slip and fall injuries. Should the owner or occupier of the premises hire a contractor *to maintain the property*, the owner or occupier is vicariously liable for the consequences arising from that contractor's tortious conduct." (Emphasis added.) *Smith* v. *Greenwich*, 278 Conn. 428, 460, 899 A.2d 563 (2006).

We find nothing in our decisional law, however, nor has the plaintiff cited any case, that supports the proposition that the nondelegable duty doctrine can provide an independent basis for imposing a duty on the title owner of premises in a case in which the plaintiff has not established that the owner of the premises had possession and control of the premises at the time the injury allegedly occurred. Rather, our case law suggests that the nondelegable duty doctrine applies only when the plaintiff has established that the defendant maintained possession and control of the property. In *Archambault* v. *Soneco/Northeastern, Inc.*, 287 Conn. 20, 54, 946 A.2d 839 (2008), our Supreme Court held that a general contractor did not owe a nondelegable duty to a subcontractor's employee to ensure a safe work site because the evidence failed to establish that the general

contractor retained or exercised control over the work site, and that the court improperly had instructed the jury to apply the nondelegable duty doctrine in that case. The present case falls within the scope of the *Archambault* holding.

The ongoing and significant construction taking place on the premises at the time of the plaintiff's injuries amounted to more than maintenance of the premises, distinguishing this case from those discussing the nondelegable duty doctrine with regard to injuries resulting from the improper removal of ice and snow accumulations from abutting sidewalks. See *Smith* v. *Greenwich*, supra, 278 Conn. 428; *Gazo* v. *Stamford*, supra, 255 Conn. 245. Because the evidence presented in this case was insufficient to establish whether it was the defendants or some other entity that had control over the premises at the place and time the plaintiff was injured, the evidence also was insufficient to establish that the defendants had a duty, nondelegable or otherwise, to protect against the plaintiff's injuries. Under the circumstances presented, we do not find error in the court's granting of the defendants' motion for judgment notwithstanding the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.