******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BRYAN SPIOTTI *v.* WENDY CLARKE ET AL.
## (AC 47397)

# BRYAN SPIOTTI *v.* ANDREW WIELBLAD
## (AC 47399)

Cradle, C. J., and Seeley and Bishop, Js.

*Syllabus*

The plaintiff in each of two cases, a police officer, appealed from the trial court's judgments granting in part a motion to strike by the defendants in the first case and granting a motion to strike by the defendant in the second case. The plaintiff alleged in his operative complaints that B, a dancer employed at R Co., an adult entertainment establishment, was served intoxicating liquors while on the premises of R Co. despite the fact that she was already noticeably intoxicated and that B's intoxicated behavior caused personal injuries to the plaintiff, who had been called to R Co. due to B's disruptive behavior. The plaintiff claimed, inter alia, that the court improperly granted the motions to strike as to the counts alleging reckless service of alcohol on the ground that he failed to plead the necessary elements of that cause of action. *Held*:

The trial court improperly granted the motion to strike in the first action as to the count of the operative complaint against the defendant V Co. alleging liability under the Dram Shop Act (§ 30-102) on the ground that the plaintiff failed to provide timely statutory notice to V Co., as, in light of Governor Ned Lamont's Executive Order No. 7G that temporarily suspended statutory deadlines related to service of process, the plaintiff provided timely notice to V Co.

The trial court improperly struck the reckless service of alcohol counts in both actions on the ground that the plaintiff failed to allege sufficient facts to support the claims against the defendants because the allegations in the operative complaints did not rise beyond ordinary negligence, as, taking as true the factual allegations in the operative complaints and construing them in the manner most favorable to sustaining their legal sufficiency, this court concluded that the alleged conscious and intentional disregard of the substantial risk of serving B alcohol while she was intoxicated in favor of increased profits demonstrated wanton and reckless conduct that, if proven, was legally sufficient to support a cause of action for reckless service of alcohol.

The trial court improperly determined that the reckless service of alcohol counts in both actions were barred by the firefighter's rule, which provides generally that a firefighter or police officer who enters private property in the exercise of his or her duties generally cannot bring a civil action against

the property owner for injuries sustained as the result of a defect in the premises, as the reckless service of alcohol counts of the operative complaints did not allege any dangerous or defective conditions on the premises but, rather, alleged recklessness in serving B alcohol in pursuit of profits despite the fact that she already was intoxicated, and, accordingly, those counts did not sound in premises liability and were therefore not barred by the firefighter's rule.

The trial court properly struck the negligent security counts of the operative complaints in both actions, as such counts sounded in premises liability and, thus, were barred by the firefighter's rule.

The trial court improperly struck the negligent supervision claims against the defendants in both actions on the ground that such claims were premised on the service of alcohol to an intoxicated person and, as such, were barred by the Dram Shop Act, as the allegations in the negligent supervision counts of the operative complaints, when construed in the manner most favorable to sustaining their legal sufficiency, included allegations outside the scope of the Dram Shop Act and the counts therefore should not have been stricken.

The trial court improperly determined, in the alternative, that the allegations in the negligent supervision counts of the operative complaints in both actions were inadequate to state such a cause of action, as, when the complaints were construed broadly, realistically, and in the manner most favorable to sustaining their legal sufficiency, considering the facts necessarily implied from the allegations, including the allegation that the defendants had a duty to monitor B and to remove her from R Co.'s premises for showing signs of aggressiveness, the allegations were sufficient to set forth a cause of action for negligent supervision.

Argued June 3—officially released October 14, 2025

*Procedural History*

Action, in each case, to recover damages for personal injuries sustained as a result of the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the court, *Pierson, J.*, granted the motion to intervene as a plaintiff in the first case filed by the town of Wolcott; thereafter, the court, *D'Andrea, J.*, granted in part the motion to strike filed by the defendants in the first case and granted the motion to strike filed by the defendant in the second case and rendered judgment thereon, from which the plaintiff in each case appealed to this court. *Reversed in part; further proceedings.*

*Andrew S. Marcucci*, with whom was *Robert C. Lubus*, for the appellant (plaintiff in each case).

*Ron J. Houde, Jr.*, for the appellees (named defendant et al. in Docket No. AC 47397 and defendant in Docket No. AC 47399).

*Opinion*

BISHOP, J. In these consolidated appeals, the plaintiff,[1] Bryan Spiotti, appeals from the judgments of the trial court granting, in part, the motions of the defendants[2] Wendy Clarke, doing business as Rockstar Cabaret; W Ventures, LLC (Ventures); and Andrew Wielblad to strike the operative complaints in the two underlying actions. On appeal, the plaintiff claims that the trial court improperly granted the motions to strike as to (1) the count against Ventures alleging liability under the Dram Shop Act, General Statutes § 30-102, due to the plaintiff's failure to provide timely statutory notice of that claim, (2) the reckless service of alcohol counts against the defendants (a) for the plaintiff's failure to plead the necessary elements of that cause of action and (b) because the firefighter's rule barred those counts, (3) the negligent security counts against the defendants on the grounds that they were barred by the firefighter's rule, and (4) the negligent supervision counts against the defendants on the grounds that (a) the Dram Shop Act barred those counts and (b) the allegations were insufficient to set forth a cause of action for negligent supervision. For the reasons that follow, we reverse the judgments of the trial court only

---

[1] The intervening plaintiff in the underlying action in Docket No. AC 47397, the town of Wolcott, did not participate in this appeal.

[2] The complaint also named M Properties, LLC, as a defendant in the underlying action in Docket No. AC 47397. In his appellate brief, the plaintiff states that he is no longer pursuing claims against M Properties, LLC, and he does not raise any claims on appeal as to M Properties, LLC. Accordingly, we refer in this opinion only to Clarke, doing business as Rockstar Cabaret; W Ventures, LLC; and Wielblad as the defendants.

with respect to the granting of the motions to strike as to the Dram Shop Act count against Ventures and as to both the reckless service of alcohol and the negligent supervision counts against the defendants. Accordingly, we reverse in part the judgments of the trial court.

These consolidated appeals arise from two underlying actions brought by the plaintiff with respect to an incident that was alleged to have occurred at an adult entertainment establishment in Wolcott known as the Rockstar Cabaret (Rockstar). In essence, the plaintiff alleged in his operative complaints that Raven Booker, a dancer employed at Rockstar, was served intoxicating liquors while on the premises of Rockstar despite the fact that she was already noticeably intoxicated and, in the early morning hours of March 6, 2020, Booker's intoxicated behavior caused personal injuries to the plaintiff, an officer of the Wolcott Police Department, who had been called to Rockstar due to Booker's disruptive behavior.

The plaintiff's operative complaint in Docket No. CV-21-6059371-S (2021 action), dated January 19, 2022, was brought against Clarke, doing business as Rockstar, and Ventures, the owner and backer of Rockstar.[3] The operative complaint sets forth the following four distinct causes of action: (1) count one against Clarke, doing business as Rockstar, and count five against Ventures are based on the Dram Shop Act; (2) count two against Clarke, doing business as Rockstar, and count six against Ventures allege reckless service of alcohol; (3) count three against Clarke, doing business as Rockstar, and count seven against Ventures assert claims based on negligent security; and (4) count four against

_____

[3] This complaint also set forth claims against M Properties, LLC, namely, a violation of the Dram Shop Act (count nine), reckless service of alcohol (count ten), negligent security (count eleven), and negligent supervision (count twelve). See footnote 2 of this opinion.

Clarke, doing business as Rockstar, and count eight against Ventures allege negligent supervision.

On August 29, 2022, Clarke, doing business as Rockstar, and Ventures filed a motion to strike the counts of the complaint against them.[4] Specifically, they argued that (1) the Dram Shop Act counts were barred because the plaintiff failed to provide them with timely statutory notice of those claims; (2) the reckless service of alcohol counts were (a) legally insufficient because they did not allege recklessness but only mere negligence and (b) otherwise barred by the firefighter's rule; (3) the counts sounding in negligent security (a) were barred by the firefighter's rule and (b) failed sufficiently to plead a duty owed by the defendants; and (4) the counts alleging negligent supervision (a) were simply a reiteration of the allegations under the Dram Shop Act, which constitutes the exclusive remedy, and (b) were legally insufficient.

In Docket No. CV-22-6064603-S (2022 action), the plaintiff brought an amended complaint, dated December 7, 2022, against Wielblad, an owner of Rockstar, personally. That operative complaint alleged against Wielblad a claim based on the Dram Shop Act (count one); reckless service of alcohol (count two); negligent security (count three); and negligent supervision (count four). Wielblad filed a motion to strike the complaint against him in its entirety, raising arguments similar to those presented in the motion to strike in the 2021 action.

In the trial court, these two complaints and motions to strike followed parallel tracks but were not consolidated. On January 26, 2024, the court ruled on the motions to strike in the 2021 action and the 2022 action using similar reasoning. The court granted the motion

---

[4] M Properties, LLC, also participated in the motion to strike and the court granted that motion as to all counts against M Properties, LLC.

to strike in the 2021 action as to eleven counts of the operative complaint, leaving only count one alleging Dram Shop Act liability against Clarke, doing business as Rockstar. In the 2022 action, the court granted the motion to strike as to all four counts of the operative complaint. These appeals followed.[5] The plaintiff filed a motion to consolidate the two appeals, which this court granted.

Before addressing the plaintiff's claims, we set forth the following standard of review concerning a motion to strike. "Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the [motion to strike] is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . *Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied.* . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged

[5] On the date that these appeals originally were filed, the trial court had not yet rendered a judgment on the stricken counts, and, in the 2021 action, there remained a count outstanding against Clarke, doing business as Rockstar. The plaintiff filed a motion pursuant to Practice Book § 61-4 (b) in the 2021 action seeking permission to file an immediate appeal as to the order striking three of the counts of the complaint against Clarke, doing business as Rockstar. The trial court granted the plaintiff's § 61-4 motion on April 1, 2024. The plaintiff filed a further § 61-4 motion with this court. On April 29, 2024, this court granted the motion on the condition that judgment be rendered on the stricken counts of both underlying complaints on or before May 6, 2024, and both appeals be amended accordingly. See Practice Book §§ 10-44 and 61-9; *Breen* v. *Phelps*, 186 Conn. 86, 89, 439 A.2d 1066 (1982); *Pellecchia* v. *Connecticut Light & Power Co.*, 139 Conn. App. 88, 90, 54 A.3d 658 (2012), cert. denied, 307 Conn. 950, 60 A.3d 740 (2013). The trial court rendered judgment on the stricken counts in both actions on May 3, 2024, and the plaintiff amended both appeals accordingly.

by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Emphasis in original; internal quotation marks omitted.) *Kumah* v. *Brown*, 127 Conn. App. 254, 259, 14 A.3d 1012 (2011), aff'd, 307 Conn. 620, 58 A.3d 247 (2013).

I

The plaintiff first claims that the court improperly granted the motion to strike as to the count of the operative complaint in the 2021 action against Ventures alleging liability under the Dram Shop Act on the ground that he failed to provide timely statutory notice.[6] We agree.

The Dram Shop Act permits an action against any person who sells liquor to an intoxicated purchaser who, as a result of such intoxication, causes injuries to a third person, "provided the aggrieved person . . . shall give written notice to such seller of such person's . . . intention to bring an action under this section. Such notice shall be given . . . within one hundred twenty days of the occurrence of such injury to person or property . . . . Such notice shall specify the time, the date and the person to whom such sale was made, the name and address of the person injured or whose property was damaged, and the time, date and place where the injury to person or property occurred." General Statutes § 30-102.

The 120 day notice requirement of the Dram Shop Act is a condition precedent to maintaining a cause of action alleging a violation of the Dram Shop Act; the

---

[6] In ruling on the motions to strike, the court noted that, although the notice requirement under § 30-102 is properly addressed in a motion to dismiss, the plaintiff had agreed on the record that the court could resolve the issue in the context of the defendants' motion to strike.

failure to file timely notice pursuant to § 30-102 deprives the trial court of subject matter jurisdiction. See *Davenport* v. *Quinn*, 53 Conn. App. 282, 292–93, 730 A.2d 1184 (1999). Our review of the issue of whether the trial court properly determined that the plaintiff's statutory notice under § 30-102 was defective is plenary. See id., 286–87.

Attached to the original complaint in the 2021 action is a return of service, dated November 9, 2020, stating that service was made on Clarke and provided notice of an intent to bring an action pursuant to the Dram Shop Act. There is also a return of service in the file dated March 9, 2021, in which the state marshal indicates that service was made on, among others, Ventures. In determining whether notice was given within 120 days, we turn to Governor Ned Lamont's pandemic related Executive Orders concerning the tolling of statutory time limits. Governor Lamont's Executive Order No. 7G, effective March 19, 2020, suspended the operability of statutory time limits and requirements regarding service of process until that suspension was lifted on March 1, 2021, by Governor Lamont's Executive Order No. 10A.[7]

The court determined that because the November 9, 2020 notice letter was addressed only to Clarke, whom

---

[7] Executive Order No. 7G provides in relevant part: "I hereby suspend, for the duration of this public health and civil preparedness emergency, unless earlier modified or terminated by me, all statutory . . . (2) time requirements, statutes of limitation or other limitations or deadlines relating to service of process, court proceedings or court filings . . . . Unless otherwise specified herein, this order shall take effect immediately and shall remain in effect for the duration of the public health and civil preparedness emergency, unless earlier modified by me." Executive Order No. 7G (March 19, 2020).

Executive Order No. 10A provides in relevant part: "[T]he provisions of Executive Order No. 7G, Section 2, dated March 19, 2020 . . . as they relate to the following, shall expire on March 1, 2021 . . . a. all statutory time requirements, statutes of limitation or other limitations or deadlines relating to service of process, court proceedings or court filings in civil matters . . . ." Executive Order No. 10A (March 1, 2021).

the court determined had received timely notice, and because "§ 30-102 required that 'the aggrieved person or persons shall give written notice to such seller of such person's or persons' intention to bring an action under this section,' " then "[t]he plaintiff has not provided sufficient legal support for this court to conclude that giving notice to [Clarke], Permittee, personally, with her claimed mailing address at [Ventures in Wolcott], constitutes proper statutory notice to [Ventures] . . . ." The court concluded that Ventures did not receive timely statutory notice and struck that count of the operative complaint in the 2021 action.

Applying the timing of Executive Order No. 7G and its recission to the present case leads us to a different result than that reached by the trial court. The record reflects a return of service dated March 9, 2021, indicating that Ventures had been served with the complaint by that date. The complaint contained all of the plaintiff's assertions against Ventures with the particularity required by the Dram Shop Act, and there is no claim on appeal that the substance of the notice was insufficient or that such notice could not be appended to a complaint.

The 120 day notice requirement of the Dram Shop Act was suspended as a result of Governor Lamont's Executive Order No. 7G, effective March 19, 2020, and that suspension subsequently was lifted on March 1, 2021, by Governor Lamont's Executive Order No. 10A. The injury was alleged to have occurred on March 6, 2020, thirteen days before the effective date of Executive Order No. 7G. Notice was given to Ventures on March 9, 2021, eight days after the suspension of the 120 day notice requirement had been lifted.[8] Accordingly, notice to Ventures was timely provided within 120 days

---

[8] We note that none of the parties in this matter has argued that Executive Order No. 7G or its termination is inapplicable to the present case.

pursuant to § 30-102 and, therefore, we conclude that the court improperly struck the Dram Shop Act count (count five of the operative complaint in the 2021 action) against Ventures.

II

The plaintiff next claims that the court improperly struck the reckless service of alcohol counts against the defendants in that it improperly determined that (1) the operative complaints failed to sufficiently plead the necessary elements of that cause of action and (2) the firefighter's rule applied so as to bar those claims. We agree with the plaintiff.

A

In ruling on the motions to strike, the court reasoned, similarly, but in two separate decisions, that the reckless service of alcohol counts of the operative complaints failed to allege sufficient facts to support the claims against the defendants in that the allegations in the operative complaints did not rise beyond ordinary negligence. Our analysis leads us to a different conclusion.

"The interpretation of pleadings is . . . a question of law for the court . . . [over which] [o]ur review . . . is plenary." (Internal quotation marks omitted.) *Carrico* v. *Mill Rock Leasing, LLC*, 199 Conn. App. 252, 261, 235 A.3d 626 (2020). "In order to prove that a sale of intoxicating liquor was made in a wilful, wanton and reckless manner, the plaintiff must demonstrate that the defendants acted in a manner that tended to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) *Coble* v. *Maloney*, 34 Conn. App. 655, 661, 643 A.2d 277 (1994). The elements of reckless service of alcohol are: (1) intoxication, (2)

that was readily apparent, and (3) that the defendant continued to serve alcoholic beverages despite obvious intoxication. See *Futterleib* v. *Mr. Happy's, Inc.*, 16 Conn. App. 497, 509–10, 548 A.2d 728 (1988).

"Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent." (Internal quotation marks omitted.) *Matthiessen* v. *Vanech*, 266 Conn. 822, 832, 836 A.2d 394 (2003). "The reason that intentional and reckless misconduct are treated the same is that the difference between the two in a conceptual sense is microscopic. Wanton misconduct is more than negligence, more than gross negligence. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action. Wilful misconduct is intentional misconduct, and wanton misconduct is reckless misconduct, which is the equivalent of wilful misconduct." (Internal quotation marks omitted.) *Futterleib* v. *Mr. Happy's, Inc.*, supra, 16 Conn. App. 509–10.

Contrary to the trial court's determination, we conclude that the allegations in the reckless service of alcohol counts, if proven, show a wanton disregard for safety. Specifically, in those counts the plaintiff alleged the following: "[I]t is common practice at Rockstar for exotic dancers to mingle with patrons at the bar and for the patrons to buy drinks for the dancers, as these personal interactions encourage the patrons to spend more money at the establishment in the form of private dances or lap dances and alcohol, which consequently accrues to the monetary benefit of both the dancers and the defendant[s] . . . [who] not only tolerated but

openly encouraged this practice."[9] Additionally, the counts alleged that the defendants "therefore had an incentive to consciously disregard the risk of overserving [Booker] in the pursuit of profit, and they did in fact consciously disregard [that] risk on March 6, 2020." The plaintiff further alleged that the defendants, their agents, servants, and/or employees knew or should have known that "serving an intoxicated person on the premises constituted a substantial risk to the safety of its patrons and to the public" and that the wrongful conduct of the defendants, their agents, servants, and/or employees "indicates a conscious, wanton, wilful, and/or deliberate disregard of the rights and safety of [the plaintiff] and was reckless, exhibiting highly unreasonable conduct involving an extreme departure from ordinary care in a situation where a high degree of danger is, or should have been, apparent."

Taking as true the factual allegations in the operative complaints and construing them in the manner most favorable to sustaining legal sufficiency; see *Kumah* v. *Brown*, supra, 127 Conn. App. 259; we conclude that the alleged conscious and intentional disregard of the substantial risk of serving Booker alcohol while she was intoxicated in favor of increased profits demonstrates wanton and reckless conduct that, if proven, is legally sufficient to support a cause of action for reckless service of alcohol.

B

The plaintiff also argues that the court improperly determined that the reckless service of alcohol counts

---

[9] The reckless service of alcohol count against Wielblad further alleged that, prior to the date of the incident, Wielblad knew that Booker had been reprimanded by staff at Rockstar for bringing alcohol into the establishment when arriving for her shift and had previously been fired for such actions and that Wielblad rehired her due to a shortage of dancers and/or because she was a significant source of revenue for Wielblad and/or Rockstar. We note that we consider these allegations only as to Wielblad and that the reckless service counts against Ventures and Clarke doing business as Rock-

sound in premises liability and, therefore, are barred by the firefighter's rule. We agree.

As previously noted, "[t]he interpretation of pleadings is . . . a question of law for the court . . . [over which] [o]ur review . . . is plenary." (Internal quotation marks omitted.) *Carrico* v. *Mill Rock Leasing, LLC*, supra, 199 Conn. App. 261.

"The common-law firefighter's rule provides, in general terms, that a firefighter or police officer who enters private property in the exercise of his duties occupies the status of a licensee and, therefore, is owed a duty of care by the property owner that is less than that owed to an ordinary invitee. . . . Thus, under the firefighter's rule, the landowner generally owes the firefighter or police officer injured on his property only the duty not to injure him wilfully or wantonly . . . ." (Citation omitted; internal quotation marks omitted.) *Levandoski* v. *Cone*, 267 Conn. 651, 653–54, 841 A.2d 208 (2004). In other words, the firefighter's rule generally provides "that a firefighter or police officer who enters private property in the exercise of his or her duties generally cannot bring a civil action against the property owner for injuries sustained as the result of a defect in the premises." *Sepega* v. *DeLaura*, 326 Conn. 788, 789, 167 A.3d 916 (2017). "[T]he firefighter's rule does not extend beyond claims of premises liability." *Lund* v. *Milford Hospital, Inc.*, 326 Conn. 846, 860, 168 A.3d 479 (2017); see also *Sepega* v. *DeLaura*, supra, 789 (holding that firefighter's rule should not be extended beyond claims of premises liability); *Levandoski* v. *Cone*, supra, 661 (firefighter's rule is confined to claims of premises liability).

In *Sepega* v. *DeLaura*, supra, 326 Conn. 788, the plaintiff, a municipal police officer, brought suit against the

star are sufficient despite not containing the additional allegations as made against Wielblad.

defendant alleging injuries resulting from the defendant's negligence in creating conditions wherein the plaintiff was mandated to kick in the door to the defendant's home. Id., 790. Our Supreme Court concluded that because the claim sounded in ordinary negligence and not premises liability relating to dangerous or defective conditions on the premises, the trial court improperly granted the defendant's motion to strike on the basis that the claim was barred by the firefighter's rule. Id., 790–815. In so deciding, our Supreme Court held that "the firefighter's rule should not be extended beyond claims of premises liability  . . . ." Id., 789.

In *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 846, a Connecticut state trooper brought an action against Milford Hospital, Inc., for injuries sustained while subduing an emotionally disturbed patient, alleging that the hospital was negligent in failing to supervise or restrain the patient properly; failing to provide for adequate security in the area where foreseeably dangerous patients were held; allowing the patient, who was known to be dangerous, to go to the bathroom unrestrained and unaccompanied; and failing to train its staff properly. Id., 848. The trial court granted the defendant's motion to strike, determining that the complaint was barred by the firefighter's rule. Id., 849. Our Supreme Court reversed, reasoning that the plaintiff's complaint sounded in negligence and that, in light of *Sepega*, the firefighter's rule does not extend beyond claims of premises liability. Id., 859–60.

As in *Lund* and *Sepega*, the reckless service of alcohol counts of the operative complaints in the present case do not allege any dangerous or defective conditions on the premises. Rather, those counts alleged recklessness in serving Booker alcohol in pursuit of profits despite the fact that she already was intoxicated. Accordingly, those counts are not barred by the firefighter's rule because they do not sound in premises liability.

For the foregoing reasons, as detailed in part II A and B of this opinion, we conclude that the court improperly struck the reckless service of alcohol counts against the defendants.

## III

The plaintiff next claims that the court improperly struck the negligent security counts of the operative complaints against the defendants on the ground that they were barred by the firefighter's rule.[10] We disagree.

The issue before us is whether the negligent security counts sound in premises liability and, thus, are barred by the firefighter's rule, or whether they sound in ordinary negligence and, therefore, are not barred by the firefighter's rule. See, e.g., *Sepega* v. *DeLaura*, supra, 326 Conn. 789 (holding that firefighter's rule does not extend beyond claims of premises liability).

As previously noted, because our review of this claim involves the interpretation of pleadings, a legal determination, our review is plenary. See *Carrico* v. *Mill Rock Leasing, LLC*, supra, 199 Conn. App. 261. "[W]e long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . .

---

[10] The plaintiff also argues that the court improperly determined that he failed to allege facts establishing a duty, a breach of that duty, and proximate cause with respect to the negligent security counts of the operative complaints. Because the negligent security counts are barred by the firefighter's rule regardless of whether they were sufficiently pleaded, we need not address this additional argument.

"[T]he essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury . . . and [t]he existence of a duty of care is a prerequisite to a finding of negligence . . . . The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant [breached] that duty in the particular situation at hand. . . .

"With respect to the element of duty in a premises liability action, possession and control of the premises by the defendant is dispositive. Liability for injuries caused by defective premises . . . does not depend on who holds legal title, but rather on who has possession and control of the property. . . . Thus, the dispositive issue in deciding whether a duty exists is whether the [defendant] has any right to possession and control of the property." (Citations omitted; internal quotation marks omitted.) *Carrico* v. *Mill Rock Leasing, LLC*, supra, 199 Conn. App. 261–63.

In counts three and seven of the operative complaint in the 2021 action, alleging negligent security against Clarke, doing business as Rockstar, and Ventures, and in count three of the operative complaint in the 2022 action, alleging negligent security against Wielblad, the plaintiff alleges that the defendants, their agents, servants, and/or employees had a duty to provide adequate security on the Rockstar premises and that the injuries sustained by the plaintiff were the result of negligent security in that: there was not enough security staff and/or bouncers appropriate for the venue, taking into account all of the circumstances there and then existing; the defendants failed to hire security staff and/or bouncers with professional security experience and training to regulate behavior on the premises that would otherwise prompt a police response; and the defendants failed to provide adequate training to the security staff

and/or bouncers to regulate behavior on the premises that would otherwise prompt a police response.

In the case at hand, however, our analysis does not turn on whether the defendants owed a duty of care to the plaintiff but, instead, turns on whether these particular counts are based on a claim of premises liability. On the basis of our review of the operative complaint, we conclude that this claim falls squarely within the category of a premises liability claim.

The Supreme Court's decision in *Monk* v. *Temple George Associates, LLC*, 273 Conn. 108, 869 A.2d 179 (2005), aids our analysis of whether the claims in the present case are based on the theory of premises liability. In *Monk*, a nightclub patron was attacked by her husband's former girlfriend in a parking lot owned or managed by the defendants. Id., 110. In reversing the judgment of this court, our Supreme Court considered "whether the Appellate Court improperly affirmed the decision of the trial court granting the defendants' motion for summary judgment on the ground that it is inconsistent with public policy to impose on parking lot owners and managers a duty of care to business invitees who are attacked intentionally on the premises by assailants with whom the invitees are acquainted." Id.

By describing the plaintiff patron's status with respect to the premises as a business invitee, our Supreme Court framed the issue regarding the lack of adequate security in terms of premises liability. "In the case of a negligence action grounded upon a theory of premises liability, the nature of the duty owed to a plaintiff depends upon the plaintiff's status on the premises at the time of the alleged injury. . . . A possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. . . . In addition, the possessor of land

must warn an invitee of dangers that the invitee could not reasonably be expected to discover. . . . Such a duty of care to an invitee, however, only attaches if the defendant exercised possession and control over the area at the time and place the injury occurred." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Millette* v. *Connecticut Post Ltd. Partnership*, 143 Conn. App. 62, 69–70, 70 A.3d 126 (2013).

In the present case, the gravamen of the plaintiff's negligent security counts against the defendants is the failure of those in possession and control of Rockstar (Clarke, Ventures, and Wielblad), through their agents, servants, and/or employees, to maintain the premises in such a manner as to keep it reasonably safe. See *Sweeney* v. *Friends of Hammonasset*, 140 Conn. App. 40, 49, 58 A.3d 293 (2013) ("[a]s the plaintiff's allegations stem from an injury caused by a dangerous condition on the premises, liability is dependent on possession and control of the dangerous premises").

Similar to the claim of a lack of security in the parking lot in *Monk*, the allegations in the negligent security counts in the present case stem from an alleged dangerous condition on the premises, specifically, that of inadequate security. These allegations, therefore, are related to the defendants' alleged possession and control of Rockstar because, without such possession and control, the defendants owed no duty to the plaintiff. Accordingly, we determine that the negligent security counts sound in premises liability and, therefore, are barred by the firefighter's rule. Thus, we conclude that the court properly granted the motions to strike as to the negligent security counts of the operative complaints against the defendants.[11]

---

[11] The plaintiff also argues that a public function exception to the firefighter's rule applies. The plaintiff cites no case law nor are we aware of any applying a public function exception to the firefighter's rule. Rather, in support of his argument, the plaintiff cites to *Morin* v. *Bell Court Condominium Assn., Inc.*, 223 Conn. 323, 612 A.2d 1197 (1992). In that case, a police

IV

The plaintiff last claims that the court improperly struck the negligent supervision claims against the

officer, who was injured when he tripped on a defective stair after responding to a fire at the defendant condominium, brought an action for negligence in the maintenance of the stairway. Id., 325. The jury returned a verdict for the plaintiff, but the trial court granted the defendant's motion to set aside the verdict and the plaintiff appealed. Id., 326. In affirming the judgment of this court, our Supreme Court held that there was insufficient evidence as a matter of law to support the conclusion that the defendant had constructive notice of the plaintiff's presence at the time and place of the incident. Id., 325.

The plaintiff in *Morin* argued that "even if he failed to establish constructive notice by showing a predictable pattern of prior usage, constructive notice should be assumed because, according to § 345 (2) of the Restatement (Second) of Torts, there is an exception to the general rule that licensees are not afforded the implied representation of safety given to invitees when, as here, the premises were open to the public. The exception provides that '[t]he liability of a possessor of land to a public officer or employee who enters the land in the performance of his public duty, and suffers harm because of a condition of a part of the land held *open to the public*, is the same as the liability to an invitee.' . . . 2 Restatement (Second), Torts [§ 345 (2), pp. 226–27 (1965)]." (Emphasis in original.) *Morin* v. *Bell Court Condominium Assn.*, *Inc.*, supra, 223 Conn. 334. After noting a paucity of case law, our Supreme Court rejected the plaintiff's argument that he should be considered an implied invitee because he was injured in an area open to the public because "[t]he fact that common areas of a condominium complex are open to the various condominium owners does not establish that they are, as a matter of law, open to the public. In situations in which the premises have been considered open to the public, there is generally some sort of public function or traditional business purpose being served. Public or business functions are conspicuously absent in a private residence such as a condominium building." (Footnotes omitted.) Id., 334–35.

Significantly, *Morin* contains no mention of the firefighter's rule. At the time of the trial court's 1990 decision in *Morin*, the firefighter's rule had not yet been extended by our Supreme Court in *Furstein* v. *Hill*, 218 Conn. 610, 590 A.2d 939 (1991), to police officers. "In *Furstein* v. *Hill*, supra, [610, our Supreme Court] considered whether to extend the firefighter's rule to a police officer. . . . [In *Furstein*, our Supreme Court] read [*Roberts* v. *Rosenblatt*, 146 Conn. 110, 148 A.2d 142 (1959)] as adopt[ing] the principle expressed in the Restatement (Second) of Torts, § 345 (1), that the liability of a possessor of land to one who enters the land only in the exercise of a privilege, for either a public or a private purpose, and irrespective of the possessor's consent, is the same as the liability to a licensee. 2 Restatement (Second), Torts [§ 345 (1), pp. 226–27 (1965)]. *Furstein* v. *Hill*, supra, 615. We concluded that the rule applies to police officers as well as firefighters."

defendants on the ground that (a) those claims were premised on the service of alcohol to an intoxicated person and, as such, were barred by the Dram Shop Act and (b) the allegations, nonetheless, were insufficient to set forth a cause of action for negligent supervision. We agree with the plaintiff.

The operative complaints allege that the plaintiff's injuries were the result of the negligent supervision of the defendants' employees by their agents, servants, and/or employees, in the following ways: (1) inadequate supervision of security staff and/or bouncers thereby causing the altercation to spiral out of control and prompt a police response; (2) failure to properly train their agents, servants, and/or employees to properly monitor individuals showing signs of intoxication and/or aggressiveness; (3) failure to adopt adequate policies and/or procedures for monitoring individuals showing signs of intoxication and/or aggressiveness; (4) failure to properly train their agents, servants, and/or employees to remove individuals showing signs of intoxication and/or aggressiveness from the premises; (5) failure to adopt adequate policies and/or procedures for removing individuals showing signs of intoxication and/or aggressiveness from the premises; (6) failure to properly supervise the premises; (7) failure to properly and adequately staff the premises; and (8) failure to provide adequate security on the premises.

---

(Citation omitted; internal quotation marks omitted.) *Levandoski* v. *Cone,* supra, 267 Conn. 659.

The firefighter's rule is not without distinction between public and private property. "The common-law firefighter's rule provides, in general terms, that a firefighter or police officer who enters private property in the exercise of his duties occupies the status of a licensee and, therefore, is owed a duty of care by the property owner that is less than that owed to an ordinary invitee." Id., 653–54. The operative complaints in the present case alleged that Rockstar was owned by Clarke, Ventures, and Wielblad. Despite the plaintiff's argument that Rockstar was open to the public, there is no dispute that Rockstar was privately owned.

## A

The trial court determined that the negligent supervision counts against the defendants were "clearly and specifically related to the service of alcohol, which falls exclusively under the scope of the Dram Shop Act." Our analysis leads us to a different conclusion.

We begin with a brief discussion of the history of the Dram Shop Act and its relationship to a common-law negligence claim set on the same factual allegations. In *Quinnett* v. *Newman*, 213 Conn. 343, 568 A.2d 786 (1990), overruled by *Craig* v. *Driscoll*, 262 Conn. 312, 813 A.2d 1003 (2003), our Supreme Court explained the history of a common-law claim for negligence in the selling of alcohol to intoxicated adults and the Dram Shop Act as follows: "At common law there is no cause of action based upon negligence in selling alcohol to adults who are known to be intoxicated. While such acts may constitute the breach of a duty owed to others, the cause of action in a variety of factual settings has uniformly failed for the reason that the subsequent injury has been held to have been proximately caused by the intervening act of the immoderate consumer whose voluntary and imprudent consumption of the beverage brings about intoxication and the subsequent injury. . . . In Connecticut, as far back as 1872, it came to be felt that the . . . common-law rule [limiting the liability of purveyors of alcohol] was to some extent overly harsh and should be modified by statute. . . . The 1872 act gave a cause of action against a seller who sold intoxicating liquor to a person who thereby became intoxicated for any damage or injury to any other person, or to the property of another done by the intoxicated person in consequence of his intoxication. Thus, this act, in situations where it was applicable, displaced the common-law rule that the proximate cause of intoxication was not the furnishing of the liquor but its consumption. . . . The modern version of this

so-called civil damage or dram shop act is . . . § 30-102. Despite numerous amendments throughout its one hundred twenty-nine year history, the act's applicability remains essentially unchanged." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Quinnett* v. *Newman*, supra, 345–47. In *Quinnett*, our Supreme Court held that "we are here confronted with a tavern seller-adult patron situation, the precise factual circumstance contemplated by § 30-102. This being the case, we defer to the legislative policy as it is articulated by § 30-102 and leave the plaintiff to the remedy set forth therein." Id., 347–48.

In *Craig* v. *Driscoll*, supra, 262 Conn. 312, our Supreme Court overruled *Quinnett*, holding that the Dram Shop Act "does not occupy the field so as to preclude a common-law action in negligence against a purveyor of alcoholic beverages for service of alcoholic liquor to an adult patron who, as a result of his intoxication, injures another." Id., 330. Shortly after the decision in *Craig*, "the legislature effectively overruled [the] holding in that case by expressly abrogating the common-law negligence action that this court had recognized. See Public Acts 2003, No. 03-91." *O'Dell* v. *Kozee*, 307 Conn. 231, 265, 53 A.3d 178 (2012). Number 03-91 of the 2003 Public Acts added the following language to the Dram Shop Act: "Such injured person shall have no cause of action against such seller for negligence in the sale of alcoholic liquor to a person twenty-one years of age or older." As a result, the plain language of the Dram Shop Act eliminates the common-law negligence causes of action allowed for by *Craig* and constitutes the exclusive remedy "[i]f any person, by such person or such person's agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another . . . ." General Statutes § 30-102.

The question before us is whether the Dram Shop Act bars the plaintiff's negligent supervision claims. "Under Connecticut law, an employer may be held liable for the negligent supervision of employees. See *Gutierrez* v. *Thorne*, 13 Conn. App. 493, 500, 537 A.2d 527 (1988) (recognizing independent claim of direct negligence against employer who failed to exercise reasonable care in supervising employee); *Roberts* v. *Circuit-Wise, Inc.*, 142 F. Sup[p]. 2d 211, 214 (D. Conn. 2001) (in negligent supervision action, 'plaintiff must plead and prove that she suffered an injury due to the defendant's failure to supervise an employee whom the defendant had [a] duty to supervise'); see also *Shore* v. *Stonington*, 187 Conn. 147, 155, 444 A.2d 1379 (1982) (liability in 'any situation where a third party is injured by an employer's own negligence in failing to select an employee fit or competent to perform the services of employment')." *Seguro* v. *Cummiskey*, 82 Conn. App. 186, 191, 844 A.2d 224 (2004).

In the present case, the negligent supervision counts of the operative complaints largely restate the allegations in the Dram Shop Act counts as to the service of alcohol to an intoxicated person. They also contain, however, when construed in the manner most favorable to sustaining their legal sufficiency; see, e.g., *Kumah* v. *Brown*, supra, 127 Conn. App. 259; allegations outside the scope of the Dram Shop Act. The negligent supervision counts are not premised on simple negligence. Rather, they assert distinct claims against the defendants for a failure to supervise. Specifically, the Dram Shop Act allows the seller of alcohol to be held liable for injuries caused to a third person by a purchaser of alcohol as a consequence of such intoxication but provides that the injured person "shall have no cause of action against such seller for negligence in the sale of alcoholic liquor to a person twenty-one years of age or older." General Statutes § 30-102. By contrast, a claim

sounding in negligent supervision pertains to an employer's failure to exercise reasonable care in supervising employees. *See Seguro* v. *Cummiskey*, supra, 82 Conn. App. 191–92. The negligent supervision counts in the present case alleged, in part, that the defendant employers failed to adequately supervise security staff and bouncers in such a way that they would know to remove from the premises an employee who was becoming aggressive. This relates to an employer's response to a situation apart from any service or ingesting of alcohol by a disruptive employee. Accordingly, we conclude that because the plaintiff pleaded negligent supervision outside the scope of the Dram Shop Act, the related counts should not have been stricken.

B

Finally, as to the negligent supervision counts, the plaintiff argues that the court improperly determined that the allegations in the operative complaints were inadequate to state such a cause of action. We agree.

The trial court determined, in the alternative, that the negligent supervision counts against the defendants failed to allege the necessary elements of that cause of action. The court considered this an additional reason to strike the negligent supervision counts of the operative complaints.

Our review of this claim involves the interpretation of pleadings, a legal determination, over which our review is plenary. See *Carrico* v. *Mill Rock Leasing, LLC*, supra, 199 Conn. App. 261. "[A]n employer may be held liable for the negligent supervision of employees. . . . [I]n [a] negligent supervision action, [a] plaintiff must plead and prove that [he] suffered an injury due to the defendant's failure to supervise an employee whom the defendant had [a] duty to supervise . . . . Negligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others fails

to do so. . . . The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Citations omitted; internal quotation marks omitted.) *Seguro* v. *Cummiskey*, supra, 82 Conn. App. 191–92.

The operative complaints allege that Booker was an employee of Rockstar; that the defendants, their agents, servants and/or employees had a duty to provide adequate supervision of individuals on the Rockstar premises; and that the plaintiff's injuries were the result of the defendant's negligent supervision in failing, among other things, to monitor Booker and remove her from the premises for showing signs of aggressiveness. Accordingly, the complaint alleges a duty to monitor its employees and a breach of that duty that caused actual injury.[12] When we construe the complaints broadly, realistically, and in the manner most favorable to sustaining their legal sufficiency, considering the facts necessarily implied from the allegations; see *Kumah* v. *Brown*, supra, 127 Conn. App. 259; we conclude that the allegations are sufficient to set forth a cause of action for negligent supervision.

For the foregoing reasons, as detailed in part IV A and B of this opinion, we conclude that the trial court improperly struck the negligent supervision counts of the operative complaints.

The judgments are reversed only as to counts two, four, five, six, and eight of the operative complaint in Docket No. CV-21-6059371-S and as to counts two and

---

[12] We note that there was no argument asserted in the motions to strike and no argument on appeal regarding the legal existence of a duty of employers to monitor their employees for aggressiveness. "In ruling on a motion to strike the trial court is limited to considering the grounds specified in the motion." *Meredith* v. *Police Commission*, 182 Conn. 138, 140, 438 A.2d 27 (1980).

four of the operative complaint in Docket No. CV-22-6064603-S; the judgments are affirmed in all other respects.

In this opinion the other judges concurred.